**WATANABE ING LLP**
A Limited Liability Law Partnership

MELVYN M. MIYAGI   1624-0
  mmiyagi@wik.com
First Hawaiian Center
999 Bishop Street, Suite 1250
Honolulu, Hawaiʻi  96813
Telephone:   (808) 544-8300
Facsimile:   (808) 544-8399

**KING & SPALDING LLP**

PHILIP R. GREEN            11632-0
  pgreen@kslaw.com
1180 Peachtree Street, N.E., Suite 1600
Atlanta, Georgia  30309
Telephone:  (404) 572-4600
Facsimile:   (404) 572-5100

Attorneys for Defendant
**R.J. REYNOLDS TOBACCO COMPANY**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| MARVIN MANIOUS and VALERIE MANIOUS, | ) ) Case No. |
| | ) |
| Plaintiffs, | ) **NOTICE OF REMOVAL** |
| | ) |
| v. | ) **JURY DEMAND** |
| | ) |
| R.J. REYNOLDS TOBACCO COMPANY, a North Carolina for Profit Corporation, PHILIP MORRIS USA, INC., a Virginia for Profit | ) ) ) ) |

Corporation, LIGGETT GROUP LLC,    )
a Delaware for Profit Limited Liability    )
Corporation; FOODLAND Super    )
Market, Limited d/b/a/ FOODLAND,    )
SACK 'N SAVE FOODS, and GAS N    )
GO, a Hawai'i domestic corporation; J.    )
HARA STORE, INC., Limited, a    )
Hawai'i domestic corporation; and    )
WAL-MART INC.,    )
    )
     Defendants.    )

## NOTICE OF REMOVAL

1.     Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant R.J. Reynolds Tobacco Company ("Reynolds"), by and through its undersigned counsel, hereby removes this case previously captioned as *Marvin Manious, et al. v. R.J. Reynolds Tobacco Co., et al.*, No. 3CCV-22-0000072, currently pending in the Circuit Court of the Third Circuit in the State of Hawai'i, to the United States District Court for the District of Hawai'i.

## INTRODUCTION

2.     On March 15, 2022, Plaintiffs Marvin Manious and Valerie Manious filed suit against Defendants alleging that smoking cigarettes manufactured by Reynolds caused Plaintiff Marvin Manious to develop laryngeal cancer.  Plaintiffs claim that Reynolds designed defective cigarettes and, together with Defendant Philip Morris USA ("PM USA") and Defendant Liggett Group LLC ("Liggett")

(collectively, the "Foreign Tobacco Companies"), engaged in a conspiracy to defraud Plaintiffs.  PM USA and Liggett have been dismissed from the case, and therefore no consent is required from these former parties.

3.      Plaintiffs also sued several retailers under the theory that Mr. Manious purchased cigarettes from them and was injured as a result of smoking those cigarettes.  The retailers included two Hawaiʻi-based companies, Foodland and J. Hara (together, the "Hawaiʻi Retailers"), and one foreign company, Walmart.

4.      Trial is set to begin on February 27, 2024.  On Tuesday, February 20, 2024—one week before trial—Plaintiffs voluntarily dismissed the Hawaiʻi Retailers with prejudice without receiving any monetary compensation in return.  The dismissal of the Hawaiʻi Retailers has now created complete diversity of citizenship. Both Plaintiffs are citizens of Hawaiʻi and the only remaining defendant, Reynolds, is a citizen of North Carolina.  Because the amount in controversy far exceeds $75,000, federal jurisdiction exists under 28 U.S.C. § 1332.

5.      This notice of removal is also timely under 28 U.S.C. § 1446(c)(1).  In 2011, Congress amended section 1446 to specifically authorize removal of cases based upon diversity jurisdiction more than one year after commencement in state court where, as here, "the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1).  Reynolds satisfies

3

this exception to the ordinary removal deadline because the record shows that Plaintiffs failed to actively litigate against, let alone take any meaningful steps to recover from, the Hawai'i Retailers before dismissing them. For example:

- Plaintiffs never sought any discovery against the Hawai'i Retailers. Plaintiffs neither propounded written discovery requests against the Hawai'i Retailers nor sought any fact witness depositions in connection with their claims against the Hawai'i Retailers. And of the nine corporate representatives they designated as possible witnesses in this case, not a *single* one is associated with the Hawai'i Retailers.

- Plaintiffs did not disclose a single expert witness to testify that products sold by the Hawai'i Retailers caused their injuries, nor to offer any opinion about the Hawai'i Retailers at all.

- On the eve of trial, Plaintiffs released the Hawai'i Retailers from this matter without *any monetary consideration whatsoever*.

- Given that the Hawai'i Retailers' liability would be derivative of any liability attributable to the Foreign Tobacco Companies, and given that Plaintiffs knew those companies (including Reynolds) would be fully capable of satisfying any judgment, Plaintiffs had no use for the Hawai'i Retailers once the case proceeded past the typical one-year removal deadline.

6.     These circumstances show that Plaintiffs included the Hawai'i Retailers in this litigation as "removal spoilers" in a bad-faith ploy to foreclose removal of this action to federal court. *Heller v. Am. States Ins. Co.*, No. CV159771DMGJPRX, 2016 WL 1170891, at *2 (C.D. Cal. Mar. 25, 2016) (quoting *Aguayo v. AMCO Ins. Co.*, 59 F. Supp. 3d 1225, 1266 (D.N.M. 2014)). Congress established the bad-faith exception to the one-year removal deadline precisely to prevent this type of

4

"strategic gamesmanship." *Id.* at *3. Accordingly, this Notice of Removal is timely filed and this action may be removed to this Court under 28 U.S.C. §§ 1441 and 1446.

## FACTUAL BACKGROUND

7.    Plaintiffs Marvin Manious and Valerie Manious seek damages for personal injuries related to Mr. Manious's diagnosis with laryngeal cancer on or about September 18, 2020.  Plaintiffs assert claims against Reynolds based on negligence, strict liability, fraud, and conspiracy.  Mrs. Manious asserts a derivative claim for loss of consortium.  Plaintiffs asserted only conspiracy claims against PM USA and Liggett, as well as four law firms—Defendants Shook, Hardy & Bacon L.L.P. ("Shook"), Covington & Burling L.L.P. ("Covington"), Greenspoon Marder L.L.P. ("Greenspoon"), and Womble Bond Dickinson (US) L.L.P. ("Womble") (collectively, the "Law Firm Defendants").  Plaintiffs alleged a single claim for strict liability against Walmart and local Hawaiʻi retailers J. Hara and Foodland (which does business as "Foodland," "Sack 'N Save Foods," and "Gas N Go").

8.    Despite Defendants' opposition, this case was consolidated with another case, *Merle Silva v. Philip Morris USA, Inc., et al.*, No. 3CCV-22-0000271, that was pending in the same Circuit Court against a similar set of defendants.  *See* Ex. C-2, Order Granting Pls' Mot. to Consolidate for Discovery and Trial.  Reynolds is contemporaneously removing that case on the same grounds set forth here.

9.     Reynolds is the only remaining defendant in this litigation.  Defendants PM USA and Liggett were dismissed in connection with confidential settlement agreements.  *See* Ex. C-3, Order Re: Stip. for Partial Dismissal with Prejudice as to All Claims Against Def. Liggett Grp. LLC, Dkt. 1654; Ex. C-4, Stip. For Partial Dismissal with Prejudice as to All Claims Against Def. Philip Morris USA Inc., and Order.  The Law Firm Defendants were previously dismissed as well.  *See* Ex. C-5, Stip. For Greenspoon Dismissal, Dkt. 391; Ex. C-6, Order Dismissing Law Firms, Dkt. 644.

10.     Plaintiffs never made any serious effort to prosecute their claims against the Hawai'i Retailers.  They have not pursued any discovery against the Hawai'i Retailers, they have not developed the requisite expert evidence to press their claims against those defendants, and they have not otherwise invested any time or resources in actively litigating against those defendants.  Despite this consistent lack of interest in pursuing the claims against the Hawai'i Retailers, Plaintiffs waited until after this case had progressed beyond the typical one-year mark for removal before voluntarily dismissing them.

11.     The same counsel representing Plaintiffs in this case has repeatedly named local retailers as defendants in other recent tobacco litigation to defeat diversity, without meaningfully developing their claims.  *See* Ex. C-7, Hawai'i

Retailers Position Statement, Dkt. 1077, 5 ("In each of [the seven cases brought by Plaintiffs' counsel], the plaintiffs made the intentional decision to name Hawai'i retailers, although the retailers vary from case to case.").  And with regard to this case specifically, the Hawai'i Retailers have observed, "Plaintiffs [] conducted no discovery *at all* of the Retailer Defendants."  *Id.* (emphasis added).

12.     Nearly two years after commencing this action, Plaintiffs still have not designated an expert witness to testify that any of Plaintiffs' alleged injuries were caused by any actions of the Hawai'i Retailers or to provide any other testimony about the Hawai'i Retailers.  *See* Ex. C-8, Pls' Am. Initial Disclosures ("Disclosures"), Dkt. 617.  And of the nine corporate representatives Plaintiffs designated as potential witnesses in this case, not a *single* one is associated with any of the Hawai'i Retailers.  *See id.* (designating nine corporate representatives of Reynolds, PM USA, Liggett, and Reynolds predecessor Lorillard).

13.     Given Plaintiffs' failure to develop a case against the Hawai'i Retailers, those defendants have consistently refused to offer Plaintiffs *any* compensation to resolve the claims against them.  On February 13, 2024, Plaintiffs' counsel represented for the first time that Plaintiffs intended to "release" the Hawai'i Retailers "outright," with each party to bear their own costs and fees.  *See* Ex. F, Decl. of Lyle S. Hosoda ("Hosoda Decl."), ¶ 3.  On February 20, 2024, Plaintiffs'

counsel stated in open court that Plaintiffs intended to "dismiss the retailers," pursuant to an agreement under which each party will bear their own costs and fees. Ex. C-9, Feb. 20, 2024 Hr'g Tr.[1] at 694:18-20.  That is the very same offer Plaintiffs rejected during both court-ordered settlement conferences earlier in this case.  *See* Ex. C-7, Hawai'i Retailers' Position Statement, Dkt. 1077, 5.  Plaintiffs' sudden acceptance of this offer on the eve of trial—once they were safely past the typical one-year period for removal and after failing to pursue any discovery against the Hawai'i Retailers for the past two years—confirms that Plaintiffs' purported claims against the Hawai'i Retailers were nothing more than a litigation tactic to defeat diversity jurisdiction and that Plaintiffs never had any intention of proceeding to trial against the Hawai'i Retailers.

14.    Finally, on February 20, 2024—one week before trial—Plaintiffs voluntarily dismissed Walmart and the Hawai'i Retailers with prejudice pursuant to Hawaii Rule of Civil Procedure 41(a)(1)(B).  *See* Ex. C-10, Stipulation and Order for Partial Dismissal with Prejudice of All Claims Brought Against Defendants Foodland Super Market, Limited d/b Foodland, Sack 'N Save Foods, and Gas N Go, J. Hara Store, Inc., Walmart Inc., and Par Hawaii, LLC, d/b/a Hele and NomNom

---

[1] Reynolds notes that the February 2024 hearing transcripts consist of a true and correct record of proceedings as transcribed by third-party court reporter hired by the parties and certified by the reporter.  The official court hearing transcript is not available at this time.

("Stipulation of Dismissal"), Dkt. 1648 (filed Feb. 20, 2024). That Stipulation was signed by the court on February 21, 2024. Dkt 1648. Reynolds removed the matter to this Court one day later.

## ARGUMENT

## I.    THIS COURT HAS ORIGINAL DIVERSITY JURISDICTION

15.    "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  28 U.S.C. § 1332(a)(1).    Both the diversity-of-citizenship and the amount-in-controversy requirements are satisfied here.

### A.    Diversity of Citizenship Exists.

16.    Plaintiffs Marvin Manious and Valerie Manious allege they are citizens and residents of the State of Hawaiʻi.  *See* Ex. A, Compl., ¶ 2.  Reynolds does not contest these allegations.

17.    A corporation is a citizen of its state of incorporation and of the state in which it has its principal place of business.  28 U.S.C. §1332(c)(1).  Defendant Reynolds is incorporated under the laws of, and has its principal place of business in, the State of North Carolina.  Ex. A, Compl., ¶ 8.  Reynolds therefore is, and was at the time this action was commenced, a citizen of the State of North Carolina.

9

18.    Because all current Plaintiffs are citizens of Hawai'i and the only current defendant is a citizen of North Carolina, complete diversity exists between the parties.  *See Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998) (explaining that cases fall within a federal court's diversity jurisdiction only if "diversity of citizenship among the parties is complete, i.e., only if there is no plaintiff and no defendant who are citizens of the same State").

**B.    The Amount in Controversy Exceeds $75,000.**

19.    Pursuant to 28 U.S.C. § 1446(c)(2)(B), removal is proper if the court finds, by a preponderance of the evidence, that the amount in controversy exceeds $75,000, exclusive of interest and costs, as set forth in 28 U.S.C. § 1332(a).

20.    The same "liberal rules" that apply to other matters of pleading apply to removal allegations, and the amount-in-controversy allegation of a defendant removing a case to federal court "should be accepted" when not contested by the plaintiff or questioned by the court.  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 81 (2014).  A defendant invoking federal court jurisdiction can establish the amount in controversy by relying on even a single piece of evidence, including a settlement demand.  *See, e.g.*, *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (finding single settlement letter was sufficient to establish amount in controversy because "[a] settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim");

*Uribe v. Autozone, Inc.*, 166 F. App'x 896, 897 (9th Cir. 2006) ("The district court properly relied upon a pre-removal settlement letter to conclude that the amount in controversy exceeded the jurisdictional minimum for diversity jurisdiction under 28 U.S.C. § 1332.").

21.     Here, the amount-in-controversy requirement is satisfied because it is apparent from the facts of this case that Plaintiffs have placed an amount in excess of $75,000, exclusive of interest and costs, at issue.[2]  Plaintiff Marvin Manious alleges that he developed, and underwent surgery and radiation to treat, laryngeal cancer he attributes to smoking cigarettes manufactured by Reynolds.    Ex. A, Compl., ¶ 3; *see* Ex. C-11, Manious Dep., 171:20–25; 172:1–8, 499:2–12 (testifying that he underwent surgery and radiation to treat his laryngeal cancer).  Plaintiff Valerie Manious is asserting a claim of loss of consortium.  Ex. A, Compl., 90. Plaintiffs are seeking special damages, general damages, pre- and post-judgment interest, punitive damages, and attorneys' fees and costs for both Plaintiffs in connection with each of these alleged injuries and treatments.  *See id.*  Plaintiffs' counsel has demanded amounts from the Foreign Tobacco Companies that is significantly in excess of $75,000 to resolve the case.  *See* Ex. C-12, Pls' Offer of Settlement, Dkt. 175, 2 (demanding settlement award of $750,000).  This suffices

---

[2] Plaintiffs do not seek a specific amount of damages in the Complaint.  Ex. A, Compl., 90.

under Ninth Circuit precedent to establish the amount in controversy. *See Cohn*, 281 F.3d at 840; *Uribe*, 166 F. App'x at 897.

22.    Based on Plaintiffs' alleged injuries, the types of damages Plaintiffs seek, and Plaintiffs' prior settlement demands, the amount-in-controversy requirement is satisfied.

## II.    REMOVAL IS TIMELY UNDER THE BAD FAITH EXCEPTION

23.    Prior to 2011, Section 1446(c)(1) provided that a case may not be removed based on diversity jurisdiction more than one year after commencement of the action.   In 2011, however, recognizing that the one-year deadline created opportunities for plaintiffs to engage in gamesmanship to defeat removal, Congress amended the statute to provide an exception where "the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action."   28 U.S.C. § 1446(c)(1).

24.    The bad faith exception to the removal deadline "applies to 'plaintiffs who joined—and then, after one year, dismissed—defendants [whom] they could keep in the suit, but that they did not want to keep in the suit, except as removal spoilers.'"   *Heller*, 2016 WL 1170891, at *2 (quoting *Aguayo*, 59 F. Supp. 3d at 1225).   "Determining whether plaintiffs have acted in bad faith to prevent removal necessarily involves looking into the plaintiffs' subjective intent, as the text of section [1446(c)(1)] strongly suggest[s] intentionality and purpose."   *Id.*   "Since it

would be extraordinary for a party directly to admit a 'bad faith' intention, his motive must of necessity be ascertained from circumstantial evidence." *Forth v. Diversey Corp.*, No. 13-CV-808-A, 2013 WL 6096528, at \*3 (W.D.N.Y Nov. 20, 2013) (quoting *Cont'l Ins. Co. v. N.L.R.B.*, 495 F.2d 44, 48 (2d Cir. 1974)).

25.    Although the Ninth Circuit has not directly addressed what constitutes bad faith for purposes of section 1446(c)(1), "district courts have generally focused on whether the plaintiff engaged 'in strategic gamesmanship by keeping a removal-spoiling party in the case past the one-year mark in order to prevent a defendant's removal from state court.'" *In re Roundup Prod. Liab. Litig.*, No. 16-MD-02741-VC, 2022 WL 17839995, at \*3 (N.D. Cal. Aug. 30, 2022) (quoting *Weber v. Ritz-Carlton Hotel Co., L.L.C.*, No. 4:18-CV-03351-KAW, 2018 WL 4491210, at \*4 (N.D. Cal. Sept. 19, 2018)).

26.    To assess whether plaintiffs engaged in such gamesmanship, district courts in the Ninth Circuit commonly apply the test articulated in *Aguayo*. *Joo Yun Chung v. Safeway Inc.*, No. CV 17-00597 HG-KJM, 2018 WL 1794720, at \*6 (D. Haw. Apr. 16, 2018). Under the two-part *Aguayo* test, courts first examine "whether the plaintiff 'actively litigated against the removal spoiler in state court: asserting valid claims, taking discovery, negotiating settlement, seeking default judgments if the defendant does not answer the complaint, et cetera.'" *In re Roundup*, 2022 WL

17839995, at *3 (quoting *Aguayo*, 59 F. Supp. 3d at 1262). "Failure to actively litigate against the removal spoiler will be deemed bad faith." *Aguayo*, 59 F. Supp. 3d at 1262.

27.   If, on the contrary, the court finds that the plaintiff actively litigated against the removal spoiler, then a rebuttable presumption of good faith arises. *Id*. But the defendant may still rebut this presumption with evidence "that establishes that, despite the plaintiff's active litigation against the removal spoiler, the plaintiff would not have named the removal spoiler or would have dropped the spoiler before the one-year mark but for the plaintiff's desire to keep the case in state court." *Id*. at 1262–63.

28.   Here, the Court does not need to reach the second prong of the *Aguayo* test because Plaintiffs failed to actively litigate against the removal spoilers and thus cannot invoke even a rebuttable presumption of good faith.  Yet even if Plaintiffs could establish that presumption, it would be rebutted by evidence of bad faith in the form of Plaintiffs' sudden release of the Hawaiʻi Retailers without any monetary consideration whatsoever on the eve of trial and once they were safely past the one-year mark.  That evidence shows that Plaintiffs' sole purpose for naming the Hawaiʻi Retailers and keeping them in the case was not to recover meaningful relief, but to prevent removal to federal court.

**A.     Plaintiffs Have Not Actively Litigated Against the Hawai'i Retailers.**

29.     Throughout this litigation, Plaintiffs have vigorously litigated their claims against Foreign Tobacco Companies.  But Plaintiffs have shown no interest in actually litigating their claims against the Hawai'i Retailers.

30.     Under the *Aguayo* test, it is not enough for a plaintiff merely to assert a "colorable claim" against non-diverse defendants in a pleading.  59 F. Supp. 3d at 1264–65.  Rather, the plaintiff must also *actively* litigate that claim.  *Id.*  To engage in active litigation against a non-diverse defendant, a plaintiff at the very least must seek meaningful discovery from that defendant.  *See id.* at 1274 (explaining that "[m]ost often, the relevant factor will be whether the plaintiff took discovery from the defendant").  A lack of meaningful discovery, especially over a lengthy period of time, weighs strongly in favor of a finding of bad faith, and the longer the case proceeds without more than "non-token" discovery against the diversity-destroying defendant, the stronger the indication of bad faith.  *Id.* at 1275; *see also, e.g.*, *Heller*, 2016 WL 1170891, at *3 (finding bad faith where plaintiff failed to conduct any discovery of the non-diverse defendants); *Cesarin v. Asbestos Corp. Ltd.*, No. 15-CV-06056-HSG, 2016 WL 720684, at *3 (N.D. Cal. Feb. 24, 2016) (noting that the failure to take "meaningful formal discovery" suggested bad faith); *In re Roundup*, 2022 WL 17839995, at *3 (finding bad faith where plaintiff failed to conduct

discovery against the non-diverse defendant); *Kalfsbeek Charter v. FCA US, LLC*, 540 F. Supp. 3d 939, 943–46 (C.D. Cal. 2021) ("The failure to serve any discovery on [the non-diverse defendant] weighs in favor of a finding of bad faith."); *Forth*, 2013 WL 6096528 at *3 (similar).

31.     Furthermore, and relatedly, active litigation must serve one of the following "permissible purposes for naming and keeping a defendant in a case":

(i)     recovering damages from the defendant pursuant to a judgment;

(ii)    obtaining a judgment against the defendant, even if the plaintiff knows the defendant will be unable to satisfy the judgment;

(iii)   obtaining a settlement from the defendant, even if the plaintiff has already decided that it would not under any circumstances be economical to take the defendant to trial;

(iv)    leveraging the claims against the defendant to encourage the defendant to testify on the plaintiff's behalf against other defendants; or

(v)     obtaining discovery from the defendant by virtue of the increased scope of discovery available against parties relative to nonparties.

*Aguayo*, 59 F. Supp. 3d at 1264–65.

32.     Here, Plaintiffs did not seek any discovery from the Hawai'i Retailers, and they cannot show that they kept those local defendants in the case for any permissible purpose.

**1. Plaintiffs did not seek any discovery from the Hawai'i Retailers.**

33.     Over the course of nearly two years since the commencement of this case, Plaintiffs failed to pursue any discovery against the Hawai'i Retailers. Plaintiffs served the Foreign Tobacco Companies with multiple rounds of written discovery requests, but they did not propound a *single* request for written discovery to the Hawai'i Retailers.   Nor did Plaintiffs conduct any other form of discovery against the Hawai'i Retailers.   Despite designating nine separate corporate representatives as potential witnesses for the Foreign Tobacco Companies, Plaintiffs did not designate or seek a deposition of a *single* corporate representative associated with the Hawai'i Retailers.  *See* Ex. C-8, Disclosures (designating nine corporate representatives of Reynolds, PM USA, Liggett Group, and Lorillard).

**2. Plaintiffs did not make a genuine effort to (i) recover damages from the Hawai'i Retailers pursuant to a judgment, (ii) obtain a judgment of any kind against the Hawai'i Retailers, or (iii) obtain a settlement from the Hawai'i Retailers.**

34.     Plaintiffs did not put forth the effort necessary to recover damages against the Hawai'i Retailers or obtain a judgment or settlement of any value.  *See Aguayo*, 59 F. Supp. 3d at 1262.

35.     As the Hawai'i Retailers observed in their Position Statement to the state court, Plaintiffs' claims against them were "neither supported or well-

grounded." Ex. C-7, Hawaiʻi Retailers Position Statement, Dkt. 1077, 5.  Plaintiffs'

counsel have demonstrated a pattern of suing local retailers to prevent removal but

failing to develop triable cases against those retailers.  *See id.* at 5–6 (noting that

across all of Plaintiffs' counsel's seven recent cases, (1) "some Plaintiffs did not

know they had sued the retailers nor why"; (2) "the Plaintiffs were unable to provide

any evidence of when they started purchasing cigarettes from each retailer or how

many cigarettes were purchased"; and (3) "the Plaintiffs' own expert witnesses do

not know that the retailers are named and were not asked to analyze or formed [sic]

any direct opinions of the Retailer Defendants' liability").  And with respect to the

consolidated cases at issue here, the Hawaiʻi Retailers specifically noted that the

Plaintiffs "agreed to stipulate to not oppose the Retailers Defendants' motions for

summary judgment as to punitive damages" and that "[i]n the consolidated *Manious*

and *Silva* cases, Plaintiffs have conducted no discovery *at all of* the [Hawaiʻi

Retailers]."  *Id.* at 5, 6 (emphasis added).  Not surprisingly, given Plaintiffs' track

record and failure to develop the case, the Hawaiʻi Retailers repeatedly refused to

offer Plaintiffs any compensation to settle.  Plaintiffs thus failed to convince even

the Hawaiʻi Retailers themselves of any sincere intent to litigate.

    36.    The record in this case, including but not limited to the lack of

discovery as described above, further supports the conclusion that Plaintiffs never

made a good-faith effort to obtain a judgment or settlement of any value from the Hawaiʻi Retailers.  While Plaintiffs' experts seek to place the blame for Plaintiffs' injuries on the Foreign Tobacco Companies, they did not even bother to offer any opinions against the Hawaiʻi Retailers.  None of Plaintiffs' medical experts offer an opinion as to the Hawaiʻi Retailers.  Even Plaintiffs' proffered expert on the history of the tobacco industry, Dr. Proctor, confirmed at a voir dire examination held **two weeks before trial** not only that he does "not even know who [the Hawaiʻi Retailers] are" but that he also does not have any opinions connecting any of the Hawaiʻi Retailers to any of Plaintiffs' alleged injuries.  Ex. C-13, Feb. 13, 2024 Hr'g Tr. at 152:12-25 (counsel for the Hawaiʻi Retailers asking, "Q: And so you don't have an opinion against any one of my clients tying any of the plaintiffs' alleged injuries to any of my clients, correct?  A: That's correct."); *see also id.* at 149:9-150:21; 151:24-152:7 (Dr. Proctor confirming that he has never been to visit any of the Hawaiʻi Retailers, has never seen any advertising or marketing materials from the Hawaiʻi Retailers, has not seen any receipts for cigarettes purchased or by Plaintiffs at the Hawaiʻi Retailers, does not know what amount of cigarettes Plaintiffs purchased there, and did not include a single opinion about any of the Hawaiʻi Retailers in his 216-page expert report); *see also id.* at 153:17-18; 154:9-12 (counsel for the Hawai'i Retailers arguing after the voir dire of Dr. Proctor, "I mean, we shouldn't even be

here," and "[B]ased on this record, there's no evidence whatsoever against my clients.").

37.    Counsel for the Hawai'i Retailers conducted a similar voir dire of Plaintiffs' addiction expert, Dr. Prochaska, and obtained similar admissions.  *See* Ex. C-14, Feb. 14, 2024 Hr'g Tr. at 318:21-319:2; 319:8-321:1 (confirming that Dr. Prochaska never visited any of the Hawai'i Retailers, has not reviewed any marketing or advertising materials from the Hawai'i Retailers, does not know how many cigarettes Plaintiffs purchased from those locations, and that Dr. Prochaska did not offer a single opinion about any of the Hawai'i Retailers in her 147-page expert report); *see id.* at 322:1-12 (Dr. Prochaska confirming that she does not hold any case-specific opinions with respect to the Hawai'i Retailers' advertising or marketing).

38.    Plaintiffs' final expert witness on tobacco industry conduct and consumer expectations, Dr. Kyriakoudes, likewise did not proffer any opinions about any of the Hawai'i Retailers in his 120-page expert report, and further testified, "I did not, as a general proposition, research the retail operations that are listed in the case header.  I focused only on the Tobacco Industry activities."  *See* Ex. C-15, Dec. 14, 2023 Deposition of Louis Kyriakoudes, *Manious v. R.J. Reynolds Tobacco Co.*, at 550:11-18.

39.    Without expert testimony connecting any of Plaintiffs' alleged injuries to the Hawaiʻi Retailers, Plaintiffs cannot recover against them.  *See Barbee v. Queen's Med. Ctr.*, 194 P.3d 1098, 1121 (Haw. Ct. App. 2008), *as corrected* (Nov. 5, 2008) (noting general rule under Hawaiʻi law that causation must be established by expert medical testimony); *Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 292 (5th Cir. 2019), *as revised* (Aug. 23, 2019) (affirming bad-faith finding where "the [plaintiffs'] expert witnesses made no serious efforts to establish [the non-diverse defendant's] liability").

40.    It is not surprising Plaintiffs would make so little effort to pursue recovery or judgment against the Hawaiʻi Retailers.   Plaintiffs allege that all Defendants are "jointly and severally" liable on all claims, Ex. A, Compl., 90, and Plaintiffs are well aware that Reynolds—and each of the Foreign Tobacco Companies—would be able to satisfy any recovery awarded to Plaintiffs.  In fact, Plaintiffs in tobacco litigation have historically not recovered against a Retailer-defendant, and it defies logic that Plaintiffs would anticipate doing so now. *See, e.g.*, Ex. C-16, Verdict Form at 2, *Roach v. Philip Morris USA, et. al.*, No. 3CCV-22-0000071 (Dist. Ct. Haw. 2023) (indicating that plaintiff recovered against manufacturer defendant but not retailer defendants).  That Plaintiffs did not have any real prospect of additional recovery from the Hawaiʻi Retailers beyond what they

sought to recover from the Foreign Tobacco Companies is further evidence of their lack of genuine intent to litigate against those defendants.

41.    Finally, the belated, voluntary dismissal of the Hawaiʻi Retailers with prejudice for no monetary compensation—without any corresponding change in discovery—confirms that Plaintiffs never sought a meaningful recovery, judgment, or settlement from them.  On its own, voluntarily dismissing the Hawaiʻi Retailers with prejudice, as opposed to settling for monetary consideration, supports a finding that Plaintiffs failed to engage in good-faith, active litigation.  *See, e.g.*, *Joo Yun Chung*, 2018 WL 1794720, at *6 ("Plaintiff Chung did not actively litigate her claims against Manager Mita. . . [She] stipulated to dismiss Manager Mita with prejudice"); *Cesarin*, 2016 WL 720684, at *3   (citing "voluntary dismissal" as evidence of "bad faith"); *Hoyt*, 927 F.3d at 292 (affirming bad-faith finding in part because the plaintiffs "dismissed [the non-diverse defendant] . . . without receiving any consideration"); *Lawson v. Parker Hannifin Corp.*, Civ. No. 4:13–cv–923–0, 2014 WL 1158880 (N.D. Tex. Mar. 20, 2014) (finding bad faith in part because the plaintiff "was not monetarily compensated under a settlement agreement with the non-diverse defendant"); *Keller Logistics Grp., Inc. v. Navistar, Inc.*, 391 F. Supp. 3d 774, 780 (N.D. Ohio 2019) (similar).

42.     But Plaintiffs' eleventh-hour dismissal is especially suspect when combined with the consistent lack of discovery.  It would be one thing if Plaintiffs initially refused to dismiss their claims against the Hawaiʻi Retailers and only capitulated after developments in discovery revealed that the claims were no longer viable.  But that is not the case.  On the contrary, Plaintiffs' case against the Hawaiʻi Retailers is in exactly the same state as when this litigation began—undeveloped.  In other words, because Plaintiffs never took any discovery from the Hawaiʻi Retailers in the first place, they cannot claim that a change in discovery prompted their sudden about-face.  This warrants a finding that Plaintiffs only engaged in this performative stunt to "thwart removal."  *See McNeal v. Found. Radiology Grp., P.C.*, No. 1:22-CV-10645, 2022 WL 3010694, at *3 (E.D. Mich. July 29, 2022) (finding plaintiff acted in bad faith to "thwart removal" where "Plaintiff dismissed [the non-diverse defendant] with no compensation and no explanation of what, if anything, had changed since the start of discovery").

43.     Plaintiffs' voluntary dismissal of the Hawaiʻi Retailers with prejudice on the eve of trial, for zero dollars in compensation, confirms that they never intended to obtain a judgment or meaningful settlement from those defendants.  Plaintiffs let the Hawaiʻi Retailers go "for free" because they were never worth

anything to Plaintiffs in the first place—except as removal spoilers.  *Hoyt*, 927 F.3d at 292.

>    **3.    Plaintiffs did not seek to (iv) leverage the claims against the Hawai'i Retailers to testify on Plaintiff's behalf against other defendants.**

44.    Plaintiffs had no "leverage" against the Hawai'i Retailers in the first place because, as discussed above, they failed to develop a case against those defendants.  *Aguayo*, 59 F. Supp. 3d at 1264–65.  There is no evidence that Plaintiffs encouraged the Hawai'i Retailers to testify against Reynolds or any other defendant in return for voluntary dismissal with prejudice.   Nor would any such testimony have been fruitful here.  Plaintiffs therefore cannot claim that naming and keeping the Hawai'i Retailers in the case had anything to do with this purpose.

>    **4.    Plaintiffs did not seek to (v) obtain discovery from the Hawai'i Retailers by virtue of the increased scope of discovery available against parties relative to nonparties.**

45.    Plaintiffs cannot argue they added the Hawai'i Retailers to take advantage of the increased scope of discovery available against parties relative to nonparties.  *Aguayo*, 59 F. Supp. 3d at 1264–65.  Far from it; although the Hawai'i Retailers have been joined in this litigation for about *two years*, Plaintiffs declined to pursue any discovery from the Hawai'i Retailers *at all*.  Plaintiffs therefore cannot claim they joined the Hawai'i Retailers for this purpose either.

46.     "All of this suggests [Plaintiffs] kept [the non-diverse defendants] in the case for one purpose and one purpose only—to prevent removal during § 1446(c)'s one-year removal period." *Hoyt*, 927 F.3d at 292–93.  Because Plaintiffs failed to actively litigate against the Hawaiʻi Retailers, a finding of bad faith is warranted.  *See Aguayo*, 59 F. Supp. 3d at 1262.

### B.     Plaintiffs Have Engaged in Bad Faith Conduct to Prevent Removal.

47.     Even assuming—contrary to the record—that Plaintiffs had actively litigated against the Hawaiʻi Retailers, a finding of bad faith is still warranted in light of evidence that Plaintiffs would not have named the non-diverse defendants or would have dropped the non-diverse defendants before the one-year mark but for Plaintiffs' desire to keep the case in state court.  *See id.* at 1275.

48.     Plaintiffs' February 20, 2024 voluntary decision to release the Hawaiʻi Retailers outright—without any monetary consideration whatsoever, one week before trial—constitutes substantial evidence of bad faith.   Throughout this litigation, the Hawaiʻi Retailers have repeatedly proposed this exact same offer—for Plaintiffs to release them from this litigation in exchange for waiver of costs and fees—and Plaintiffs have repeatedly rejected it.  *See* Ex. C-7, Hawaiʻi Retailers' Position Statement, Dkt. 1077, 5 (noting that "each Retailer Defendant made bona fide offers to Plaintiffs to dismiss their claims against them in exchange for their waiver of attorneys' fees and costs").  In other words, Plaintiffs repeatedly rejected

a settlement offer with the Hawaiʻi Retailers, *while failing to pursue any discovery against those defendants*, and then suddenly changed their tune on the eve of trial and once the one-year removal period was safely past.

49.    Plaintiffs cannot claim that any development in discovery or change in circumstances or trial strategy prompted this abrupt course reversal.    Again, Plaintiffs took no discovery of the Hawaiʻi Retailers and there was clearly no trial strategy in the first place.    In light of Plaintiffs' failure to pursue any discovery against the Hawaiʻi Retailers, Plaintiffs' voluntary dismissal of these Defendants with prejudice on the eve of trial shows that Plaintiffs never intended to follow through on their perfunctory allegations against the Hawaiʻi Retailers.    Rather, Plaintiffs intended to keep the Hawaiʻi Retailers as defendants only until they believed they could safely release them without risking removal.    A plaintiff's tactic of declining settlement with a non-diverse defendant until the removal deadline has passed is evidence of bad faith.    *See, e.g.*, *Hiser v. Seay*, 2014 WL 6885433 (W.D. Ky. Dec. 5, 2014) (allowing removal based on bad-faith exception where both local defendants offered to settle for policy limits within the first two months of litigation, but plaintiff declined the offer until safely past the one-year mark).

50.    Plaintiffs' failure to pursue any discovery against the Hawaiʻi Retailers, coupled with Plaintiffs' eleventh-hour voluntary dismissal for no monetary

consideration, shows that Plaintiffs joined them in this litigation only as removal spoilers.  The Court should not countenance such gamesmanship.

### III.    REYNOLDS HAS COMPLIED WITH ALL REMOVAL PROCEDURES

51.    The Circuit Court for the Third Circuit of the State of Hawai'i is located within the judicial district for the State of Hawai'i.  *See* 28 U.S.C. § 91.  Venue for this action is proper in this Court because the District of Hawai'i is the "district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

52.    Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served upon and by Defendants are attached to this Notice of Removal.  A copy of Plaintiffs Marvin Manious and Valerie Manious's Complaint is attached as Exhibit A.  A certified copy of the Circuit Court docket sheet is attached as Exhibit B.  A copy of the Complaint (Ex. C-1) and other pleadings cited in this Notice of Removal is attached as Exhibit C.  A complete copy of the publicly filed pleadings in the Circuit Court is attached as Exhibit D.  The pleadings filed under seal in the Circuit Court will be attached hereto as Exhibit E.  Defendant is contemporaneously seeking leave to file the pleadings in Exhibit "E" under seal pursuant to *Defendant R.J. Reynolds Tobacco Company's Motion to File Under Seal Exhibit "E" to Its Notice of Removal*, filed on February 22, 2024 (the "Seal Motion").  Copies of the

pleadings that Reynolds is seeking to be filed under seal will separately be provided to the Court in a sealed envelope.

53. Defendant has complied with the 30-day deadline for filing a removal petition after removal becomes feasible, as required by 28 U.S.C. § 1446(b)(3). Diversity of citizenship did not exist until the Hawai'i Retailers were released from this litigation on February 21, 2024. *See* Ex. C-10, Stipulation of Dismissal, Dkt. 1648. As 30 days have not passed since February 21, Reynold's petition is timely under § 1446(b)(3).

54. Defendant will promptly file a copy of this Notice with the Clerk of the Circuit Court for the Third Circuit of the State of Hawai'i as required by 28 U.S.C. § 1446(d).

55. Immediately following the filing of this Notice of Removal, notice of the filing of this Notice will be delivered to Plaintiffs' counsel, as required by 28 U.S.C. § 1446(d).

56. This Notice of Removal is filed on behalf of all properly joined defendants who remain parties to this action.

57. In filing this Notice of Removal, Reynolds reserves any and all defenses, objections, and exceptions, including but not limited to those relating to service, venue, and the statute of limitations.

DATED:  Kailua-Kona, Hawai'i, February 22, 2024.

Respectfully submitted,


*/s/ Philip R. Green*
PHILIP R. GREEN
KING & SPALDING LLP

MELVYN M. MIYAGI
WATANABE ING LLP

**Attorneys for Defendant**
**R.J. REYNOLDS TOBACCO**
**COMPANY**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MARVIN MANIOUS and VALERIE MANIOUS,<br><br>    Plaintiffs,<br><br>    v.<br><br>R.J. REYNOLDS TOBACCO COMPANY, a North Carolina for Profit Corporation, PHILIP MORRIS USA, INC., a Virginia for Profit Corporation, LIGGETT GROUP LLC, a Delaware for Profit Limited Liability Corporation, SHOOK, HARDY & BACON L.L.P., a foreign limited liability partnership; COVINGTON & BURLING L.L.P., a foreign limited liability partnership; GREENSPOON MARDER L.L.P., a foreign limited liability partnership; WOMBLE BOND DICKINSON (US) L.L.P., a foreign limited liability partnership; FOODLAND Super Market, Limited d/b/a/ FOODLAND, SACK 'N SAVE FOODS, and GAS N GO, a Hawai'i domestic corporation; J. HARA STORE, INC., Limited, a Hawai'i domestic corporation; and WAL-MART INC.,<br><br>    Defendants. | CIVIL CASE NO. _____<br><br>**CERTIFICATE OF SERVICE** |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this day, a copy of the foregoing

document was duly served upon the following parties indicated below through
their attorneys, via electronic mail as follows:

WAYNE PARSONS, ESQ.                  wparsons@alohano.com
1406 Colburn Street, Suite 201C
Honolulu, Hawaiʻi  96817

SERGIO RUFO, ESQ.                    sergio@RufoLawGroup.com
Rufo Law Group, LLLC
1050 Bishop Street, Suite 322
Honolulu, Hawaiʻi  96813

ALEJANDRO ALVAREZ, ESQ.             alex@integrityforjustice.com
PHILLIP E. HOLDEN, ESQ.             phillip@integrityforjustice.com
WILLIAM F. BROWN, ESQ.
william@integrityforjustice.com
MICHAEL A. ALVAREZ, ESQ.
(*pro hac vice*)                    alex@talf.law
HERB R. BORROTO, ESQ, (*pro hac vice*)   herb@integrityforjustice.com
3251 Ponce de Leon Boulevard
Coral Gables, Florida  33134

      Attorneys for Plaintiffs
      MARVIN MANIOUS and
      VALERIE MANIOUS

DAVID M. LOUIE, ESQ.                 dlouie@ksglaw.com
NICHOLAS R. MONLUX, ESQ.            nrm@ksglaw.com
Kobayashi Sugita & Goda, LLP
First Hawaiian Center
999 Bishop Street, Suite 2600
Honolulu, Hawaiʻi  96813

LINCOLN T. ASHIDA, ESQ.             Lincoln.Ashida@torkildson.com
Torkildson Katz, A Law Corporation
120 Pauahi Street, Suite 312
Hilo, Hawaiʻi  96720-3048

2

ANNIE Y.S. CHUANG, ESQ.          ACHUANG@shb.com
Shook Hardy & Bacon L.L.P.
555 Mission Street, Suite 2300
San Francisco, California 94105

MICHAEL L. WALDEN, ESQ.        Mike.Walden@arnoldporter.com
*(pro hac vice)*
Arnold & Porter Kaye Scholer LLP
600 Massachusetts Avenue, NW
Washington, DC 20001-3743

GEOFFREY J. MICHAEL, ESQ.    geoffrey.michael@aporter.com
*(pro hac vice)*
Arnold & Porter
601 Massachusetts Avenue, NW W
ashington, DC 20001-3743

THOMAS W. STOEVER, JR., ESQ.  thomas.stoever@arnoldporter.com
Arnold & Porter
1144 Fifteenth Street, Suite 3100
Denver, Colorado 80202-2569

      Attorneys for Defendant
      PHILIP MORRIS USA, INC.

JEFFREY H. K. SIA, ESQ.         Jeffrey.Sia@hawadvocate.com
Chong, Nishimoto, Sia, Nakamura & Goya
1003 Bishop Street, Suite 2500
Honolulu, Hawaiʻi 96813

KELLY ANNE LUTHER, ESQ.     kluther@kasowitz.com
MARIA H. RUIZ              mruiz@kasowitz.com
1441 Brickell Avenue, Suite 1420
Miami, Florida 33131

      Attorneys for Defendant
      LIGGETT GROUP LLC

3

LYLE HOSODA, ESQ.                lsh@hosodalaw.com
KOURTNEY H. WONG, ESQ.      KHW@hosodalaw.com
SPENCER J. LAU, ESQ.           SJL@hosodalaw.com
Hosoda Law Group
Three Waterfront Plaza, Suite 499
500 Ala Moana Boulevard
Honolulu, Hawai'i  96813

      Attorneys for Defendants
      FOODLAND SUPER MARKET, LIMITED
      FOODLAND Super Market, Limited d/b/a/ SACK 'N SAVE FOODS
      WALMART, GAS N GO and J. HARA STORE, INC.

DATED:  Kailua-Kona, Hawai'i, February 22, 2024.

                Respectfully submitted,


                */s/ Philip R. Green*
                PHILIP R. GREEN
                KING & SPALDING LLP

                MELVYN M. MIYAGI
                WATANABE ING LLP

                **Attorneys for Defendant**
                **R.J. REYNOLDS TOBACCO**
                **COMPANY**